The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Thomas P. BENSON, Defendant– Appellant.

No. 03CA2246.

Colorado Court of Appeals, Div. V.

April 21, 2005.

Certiorari Denied Nov. 28, 2005.*

---

* Justice BENDER would grant as to the following issue:

Whether a trial court should suppress evidence from a search of a residence, obtained after an illegal entry on the part of the police, and whether, the taint from the illegal entry can be attenuated while the illegal entry continues.

John W. Suthers, Attorney General, Elizabeth Rohrbough, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Prendergast & Associates, PC, Paul A. Prendergast, Littleton, Colorado, for Defendant–Appellant.

HAWTHORNE, J.

Defendant, Thomas P. Benson, appeals from the judgment of conviction entered on a jury verdict finding him guilty of cultivation of marihuana and possession of eight or more ounces of marihuana. We affirm.

Acting on an anonymous internet tip, two undercover detectives went to defendant's home to conduct a consensual interview. Although defendant was at work when the officers arrived, his girlfriend answered the door and spoke with them. Smelling the odor of fresh marihuana, the officers requested her consent to search the house. When she refused to consent, the officers informed her that they smelled marihuana and entered the house to secure the premises. Upon defendant's return home, he executed a consent to search form and showed the officers a hidden room in his basement containing thirty-three marihuana plants. He also showed the officers a plastic container of frozen marihuana buds.

Prior to trial, defendant moved to suppress the evidence, arguing that it was the fruit of an illegal search. The trial court entered findings that no search had occurred, that the warrantless entry was justified by exigent circumstances, and that defendant consented to a warrantless search of his home.

I.

Defendant contends that the trial court erred when it denied his motion to suppress the evidence against him. We disagree.

■ When reviewing a trial court's ruling on the suppression of evidence, we give deference to the court's findings of fact and will not overturn them if supported by competent evidence in the record. We review the trial court's legal conclusions de novo, because the legal effect of the facts is a question of law. *People v. Allison,* 86 P.3d 421, 426 (Colo. 2004); *People v. Morley,* 4 P.3d 1078, 1079–80 (Colo.2000).

■ Unreasonable searches and seizures are prohibited by both the United States and Colorado Constitutions. U.S. Const. amend. IV; Colo. Const. art. II, § 7. "Unreasonable 'physical entry of the home' is the 'chief evil' against which the Fourth Amendment is directed." *People v. O'Hearn,* 931 P.2d 1168, 1173 (Colo.1997) (quoting *Payton v. New York,* 445 U.S. 573, 585, 100 S.Ct. 1371, 1379–80, 63 L.Ed.2d 639 (1980)).

■ Warrantless searches and seizures are presumptively unreasonable unless they are justified by an exception to the warrant requirement. *People v. Allison, supra.*

We need not decide whether the officers' initial warrantless entry was justified by exigent circumstances, as the trial court found. No evidence of marihuana was discovered until after defendant returned home and consented to a search of the premises. Even if the initial entry was unjustified, we conclude that defendant voluntarily consented to the search that resulted in discovery of the evi-

dence and that his consent was sufficiently attenuated from any illegal police conduct to permit admission of the evidence.

■ A warrantless search conducted pursuant to voluntary consent does not violate prohibitions on unreasonable search and seizure. The voluntariness of consent is a question of fact for the trial court to be determined under the totality of the circumstances. *People v. Brazzel*, 18 P.3d 1285, 1289 (Colo.2001); *People v. Trusty*, 53 P.3d 668, 673 (Colo.App.2001).

■ In *People v. Rodriguez*, 945 P.2d 1351, 1363 (Colo.1997), the Colorado Supreme Court set forth a two-prong test for determining whether evidence seized pursuant to a purported consent following illegal police conduct may be admitted. To meet the first prong of the test, the prosecution must show that the consent was voluntarily given. Second, the prosecution must show that the consent was not obtained through exploitation of the prior illegality. If the consent is involuntary or results from exploitation of the prior illegality, the evidence must be suppressed. *People v. Rodriguez, supra.*

■ In determining whether a purported consent is sufficiently attenuated from the underlying illegality, a reviewing court should consider the proximity between the consent and the prior illegality, the flagrancy and purpose of the police misconduct, and whether some intervening circumstance serves to break the causal chain between the illegal police conduct and the purported consent. *See Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975); *People v. Rodriguez, supra*, 945 P.2d at 1364–65.

Breaking the causal chain requires a showing that the consent is "sufficiently an act of free will to purge the primary taint" of the illegal search. *Brown v. Illinois, supra*, 422 U.S. at 602, 95 S.Ct. at 2261 (quoting *Wong Sun v. United States*, 371 U.S. 471, 486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963)); *McCall v. People*, 623 P.2d 397, 403 (Colo.1981).

■ Here, the trial court held that defendant voluntarily consented to a search of his home after the initial warrantless entry. In reaching its conclusion, the court noted that during a phone conversation with the police officers, defendant had stated that he and the officers "both knew there was marihuana going on at that residence." The court also noted that, upon arriving at the residence, defendant immediately stated that a warrant would not be necessary because he wanted to cooperate. Further, defendant then led the officers to the hidden room containing the marihuana plants and the freezer containing the marihuana buds.

The trial court also rejected defendant's claim that he consented because he was under the influence of marihuana. It based this finding on defendant's ability to drive home in "bumper-to-bumper traffic from Parker back to Mountain View," while conversing on his cell phone with the police officers, and his ability to "make a beeline first to the place where the marihuana was being grown in the basement and then to where the freezer was."

The trial court's factual findings are supported by evidence in the record, and we may not disturb them on review. These findings support the trial court's legal conclusion that defendant's consent to the search of his home was voluntary.

Further, based on the record before us, we conclude that defendant's consent to the warrantless search of his home was sufficiently attenuated from the earlier assertedly illegal entry. According to the testimony at the motions hearing, the officers entered the home approximately one hour prior to defendant's consent. Although this period is relatively short, defendant was not present when they entered and was not in police custody when he consented.

During the interval between the officers' entry and the consent, defendant voluntarily drove home from work, even though he was aware that police officers were waiting for him. While driving home, he spoke on the phone with one of the detectives and volunteered information about the marihuana on the premises. Once he arrived, he immediately consented to the search and helped the police officers find the evidence. These actions are strong indications that his consent

to the search was an act of free will untainted by any prior illegal police conduct.

Finally, the police misconduct in this case, if any, was not flagrant. The detectives were attempting to investigate vague allegations of "marihuana activity" at defendant's home by conducting a consensual interview with defendant's girlfriend when they became aware of the presence of the odor of marihuana. It does not appear from this record that they approached defendant's home with the purpose of searching the house.

In sum, even if the initial entry into defendant's home was not supported by exigent circumstances, defendant's consent to the search of his home was voluntary and attenuated from any illegality. We therefore conclude that the admission of the evidence was not error.

## II.

Defendant also contends that his convictions for possession of eight or more ounces of marihuana and cultivation of marihuana violate his right to be free from double jeopardy. We disagree.

■ A defendant may not be punished twice for the same offense under the Double Jeopardy Clauses of the United States and Colorado Constitutions, U.S. Const. amend. V; Colo. Const. art. II, § 18, unless such punishments are specifically authorized by the General Assembly. In the absence of specific legislative authorization, a reviewing court must determine "whether the offenses are sufficiently distinguishable to permit imposition of multiple punishments." *Patton v. People*, 35 P.3d 124, 129 (Colo.2001); *see People v. Gholston*, 26 P.3d 1, 10 (Colo.App. 2000).

■ To determine whether two offenses are sufficiently distinguishable to permit imposition of multiple punishments, a reviewing court applies the statutory elements test. Under this test, a defendant may not be punished multiple times for the same conduct if one offense is included in the other. The test requires the reviewing court to compare the elements of the two offenses. If one offense is established by proof of the same or fewer facts required to establish commission of the other, it is a lesser included offense. *Patton v. People, supra*, 35 P.3d at 130; *People v. Joyce*, 68 P.3d 521, 525 (Colo.App. 2002).

■ Resolution of a double jeopardy claim must initially proceed from an analysis of the charges actually brought and the convictions actually obtained rather than the evidence presented at trial. *Boulies v. People*, 770 P.2d 1274, 1280 (Colo.1989).

Here, defendant was initially charged with cultivation of marihuana and possession with intent to distribute marihuana. However, the jury acquitted defendant of the charge of possession with intent to distribute marihuana and convicted him of the lesser included offense of possession of eight or more ounces of marihuana.

We first reject the People's argument that the title of § 18–18–406, C.R.S.2004, "Offenses relating to marihuana and marihuana concentrate," provides a basis for concluding that the legislature has authorized multiple punishments in cases such as this. We are not prepared to accept the General Assembly's use of the plural in titling a statutory provision grouping related offenses as specific authorization for multiple punishments. Nor do we agree that language in § 18–18–406 setting forth different penalties for different offenses relating to marihuana authorizes multiple punishments. *See Patton v. People, supra*.

We now turn to the statutory elements test. The elements of possession of eight or more ounces of marihuana are (1) the defendant (2) in the State of Colorado (3) possessed (4) eight ounces or more of marihuana. CJI–Crim. 36:05 (1983); *see also* § 18–18–406(3)(b), C.R.S.2004. The elements of cultivation of marihuana are (1) the defendant (2) in the State of Colorado (3) knowingly cultivated, grew, produced, processed, or manufactured (4) any marihuana. CJI–Crim. 36:06 (1983); *see also* § 18–18–406(8)(a)(I), C.R.S.2004.

■ The elements of the offenses are not identical. Conviction of the offense of possession of eight or more ounces of marihuana requires proof that the defendant possessed

a certain quantity of marihuana, an element not included in the offense of cultivation of marihuana. At the same time, conviction for the offense of cultivation of marihuana requires proof that the defendant's involvement with the marihuana went beyond mere possession and involved actual cultivation, processing, or manufacturing. Because the statutory elements are not identical, we conclude that defendant's convictions do not violate constitutional protections against double jeopardy.

The judgment is affirmed.

Judge VOGT and Judge NIETO concur.